STATE of Minnesota, City of Eagan, Respondents,

v.

Taieb Hamid ELMOURABIT, Appellant.

No. C7–84–53.

Court of Appeals of Minnesota.

Oct. 9, 1984.

Kevin W. Eide, Eagan, for respondents.

Douglas Peine, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Following a jury trial, appellant was convicted of driving under the influence of alcohol, Minn.Stat. § 169.121, subd. 1(a) (Supp.1983), and disorderly conduct, Minn. Stat. § 609.72, subd. 1(1), (3) (1982). He appeals from these convictions and from an order denying his motion for a judgment of acquittal notwithstanding the verdict or in the alternative for a new trial. Appellant contends the evidence was insufficient to support the convictions. The jury also found appellant guilty of speeding but he does not appeal from that conviction. We reverse.

### FACTS

*Arrest*

On April 22, 1983, Officer Laurie Tripp of the Eagan Police Department stopped a vehicle driven by appellant Taieb Hamid Elmourabit. Tripp observed appellant rapidly accelerate and then level off at a speed of about 63 miles per hour in a 50 mile per hour zone.

Tripp testified that upon confronting appellant she detected a strong odor of alcohol and observed that his eyes appeared to be glassy and bloodshot, and she "almost immediately" formed the opinion that appellant was under the influence of alcohol.

Officer Tripp testified she was influenced by the content of appellant's verbal statements, his pleas for sympathy and his references to personal problems. Appellant told the officer his wife had left the state and that evening his children had been wondering about her absence. The officer also testified appellant exhibited mood swings, "from being very depressed to being okay, then depressed, and then like a status quo and then back."

Officer Tripp arrested Elmourabit and testified he "seemed to be somewhat unsteady" when he walked to the squad car. Her police report contained no reference to unsteady gait.

At the Eagan Police Department appellant was asked to perform sobriety tests. The prosecution introduced a video tape of the testing, explaining to the trial court a motive to avoid the impact of having the defense offer the evidence. When tested, Elmourabit demonstrated no signs of being under the influence of alcohol.

*Episode After Arrest.*

Officer Tripp gave appellant an implied consent advisory but Elmourabit never responded when asked whether he would "give the test." He asked to speak with an attorney.

Elmourabit called a lawyer, identified himself, and then fell to the floor. Officer Tripp stated appellant rolled around on the floor, moaning and repeatedly asking for a Doctor Weber. He wrapped his arms around himself, and another officer (Sewald) testified that he complained of chest pain. Neither officer felt the episode involved a heart attack but Tripp called for an ambulance.

Appellant was examined by an ambulance attendant, a paramedic. Elmourabit's pulse and blood pressure were normal, but he was writhing on the floor and "exhibiting high anxiety." No medical problem was diagnosed but it was decided to take him to a hospital because of his complaint of pain and his desire to be transported for medical help. Appellant was placed on a stretcher and taken to the back of the ambulance. An ambulance attendant testified that a police officer asked for a blood sample and the other attendant said he took Elmourabit's arm to place a tourniquet on it. At this point appellant thrashed around; he struck one attendant close to the groin area and tried to kick the other attendant. Officer Tripp said appellant was "physically aggressive" at this time and would not calm down. Over his resistance, Elmourabit was finally restrained by the two attendants and three officers.

Officer Sewald testified appellant was under the influence of alcohol. This opinion was based on a strong alcohol odor, the watery and glassy appearance of Elmourabit's eyes, and appellant's general appearance. An ambulance attendant testified she assumed appellant was under the influence of alcohol, but she said she did not have evidence as to this fact. The other attendant commented that appellant smelled of alcohol and he was hard to understand, especially when he talked fast and yelled.

*Defense Evidence.*

Appellant testified he had general fatigue and chest pains in the past two years and had scheduled a physical examination for April 22, the day he was arrested. Upon calling the attorney, he began to get hot, experienced chest pains, and fell to the floor. He stated that the pain got so bad he could not pay attention to his surroundings.

Elmourabit said he felt somebody twist his arm in the ambulance and somebody pressed their thumbnails against his ears. Already in pain from his chest, he yelled in reaction. Elmourabit said that he was injured and that his injuries included bleeding ears, numerous bruises, and a very scratched stomach. He was given medication for his chest pains but his condition was not diagnosed.

Appellant offered evidence that he could not have been under the influence when he was stopped shortly before 12:30 a.m. on April 22. He testified that he left work at 11:30 p.m. on April 21, and had had nothing to drink there. This testimony was corroborated by two members of appellant's work group at Sperry Univac who said that Elmourabit did not exhibit any symptoms of being under the influence of alcohol at work.

After leaving work Elmourabit drove two miles to his home. At home, he spoke to his live-in babysitter. He stated he did not eat or drink any alcoholic beverage at home and he left around midnight. This testimony was corroborated by the babysit-

ter, and she testified appellant did not exhibit any signs of being under the influence at home.

Next, appellant drove approximately one mile to a restaurant to cash a check. He estimated that he was there for roughly 15–20 minutes and said he ordered two beers, though he did not fully drink them:

> I don't even think I finished the first beer. I drank most of it, and I poured some of the second beer into the glass and took a couple sips and I left.

On the way home, he was stopped by Officer Tripp. A waitress at the restaurant testified appellant came in a little before midnight, ordered two beers, took only a couple sips from the second one, and did not exhibit any signs of being under the influence of alcohol.

*Trial Court Result.*

Before the case was submitted to the jury, appellant moved for dismissal of the charges of disorderly conduct and driving under the influence of alcohol. The trial judge said the disorderly conduct case was a "close one," and that he would be "tempted to vote no on it" if a juror. He also thought the D.W.I. case was "thin." Nonetheless, the trial court judge submitted the case to the jury. The jury returned guilty verdicts on charges of speeding, disorderly conduct, and driving under the influence of alcohol.

## ISSUE

Was the evidence sufficient to support guilty verdicts on charges of disorderly conduct and driving under the influence of alcohol?

## ANALYSIS

The Minnesota D.W.I. statute declares a misdemeanor for driving while "under the influence of alcohol." Minn.Stat. § 169.-121, subd. 1(a) (Supp.1983). The disorderly conduct statute, § 609.72, subd. 1(1), (3) (1982) provides:

> Whoever does any of the following in a public or private place, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
>
> (1) Engages in brawling or fighting; or * * *
>
> (3) Engages in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger, or resentment in others.

■ The standard for review on sufficiency of evidence in a criminal case is well-settled:

> In reviewing a claim of sufficiency of the evidence we must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * * The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981) (citations omitted).

■ Positive evidence of innocence may lead an appellate court to decide that the positions of the defense and the prosecution are equally probative and the state has failed to sustain its burden to prove the appellant's guilt. *See State v. Simonsen,* 252 Minn. 315, 89 N.W.2d 910 (1958). Speculation and passion are no substitute for adequate evidence.

*Driving Under The Influence Of Alcohol.*

■ The state's evidence was patently inconsistent. It included documented proof Elmourabit could control his movements as measured by a group of sobriety tests. This inconsistency supports a conclusion the state has not sustained its burden of proof. *Id.* at 324, 89 N.W.2d at 916.

■ The video tape demonstration of appellant's sobriety need not be viewed in

"the light most favorable to the prosecution." This documentary evidence has the same effect as positive testimony of an unimpeached witness. In *Simonsen,* the Minnesota Supreme Court said:

> Positive testimony of unimpeached witnesses cannot be disregarded when there is no real basis in the evidence for a finding that such evidence is either improbable or inconsistent.

*Id.* at 323, 89 N.W.2d at 916.

■ Evidence relating to the time through the completion of sobriety tests fails to demonstrate a D.W.I. offense. The evidence is still less sufficient when even slight account is taken for the line of testimony that appellant consumed very little alcohol.

It is speculative to draw conclusions on the condition of the appellant from the events after his complaints of pain. There is inadequate evidence to show whether the situation involved a physical difficulty of the appellant, an emotional difficulty, cultural difficulties, or the influence of alcohol. The only probative evidence was appellant's uncontradicted testimony of a history of unexplained chest pains and general fatigue. Testimony of observers of the episode who thought appellant was under the influence of alcohol was contradicted by the positive video taped evidence of sobriety.

We are reluctant to upset a jury verdict, but we are persuaded that must be done here. The evidence for the state was fatally "thin," strongly refuted, and inadequate to justify a verdict of guilty.

*Disorderly Conduct.*

■ A review of the evidence on disorderly conduct leads to a similar conclusion.

First, all of the evidence indicated the conflict with Elmourabit commenced when medical attendants acted on a police request for a blood sample to be taken without Elmourabit's consent.

Second, as already noted, only the defendant produced probative evidence on his condition when put into an ambulance. Thus, the jury could only speculate whether a willful offense occurred. We conclude a favorable view of the state's evidence indicates the absence of proof appellant engaged in fighting or abuse proscribed by Minn.Stat. § 609.72.

## DECISION

Neither of the two misdemeanor charges, disorderly conduct and driving under the influence of alcohol, is sufficiently supported by competent evidence.

Reversed.